### John C. Adams vs. Harrison Porter.

The defendant, in a bill of discovery, is not bound to answer any interrogatories, which may be used as evidence against him on a criminal charge.

The allegation of combination and fraud should be omitted in a bill of discovery.

The rule of the English courts of equity, that the plaintiff in a bill of discovery " shall only have a discovery of what is necessary to his own title, and shall not pry into the title of the defendant " (Cooper Eq. P. 58), is not applicable in this commonwealth.

The assignee of an insolvent debtor, who has commenced an action of trover for the recovery of personal property, mortgaged by the insolvent before his insolvency, may maintain a bill of discovery against the mortgagee, for the purpose of obtaining evidence to impeach the title of the latter.

Where the defendant in a bill of discovery demurred, and the demurrer was sustained as to certain formal parts of the bill, and was overruled as to the residue, and was then withdrawn, and the bill amended, it was held, that the defendant, notwithstanding the delay produced by filing the demurrer, should be entitled to his costs, on filing full and proper answers.

This was a bill in equity for a discovery.

The plaintiff alleged, that, on the 14th day of June, 1845, David Woods and Stephen Cobb, traders and partners, under the firm of Woods and Cobb, made an application to Bradford Sumner, a master in chancery, for the benefit of the statutes for the relief of insolvent debtors, by a " petition, which was

duly heard and received, and upon which the usual proceedings took place : " That, at the first meeting of the creditors, the plaintiff was duly chosen assignee of the estate of the insolvents, and duly entered upon the duties of his trust, and has continued therein, and still continues to be such assignee : That, on the 7th day of June, 1845, a few days only previous to the application of the insolvents to the master in chancery, the defendant, " combining and confederating with certain persons, to the plaintiff unknown, did fraudulently and designedly make with the said firm a certain pretended mortgage of a large part of the personal property of the said firm," which was duly recorded in the office of the city clerl of Boston : That the defendant took the property included in the mortgage into his possession, and converted it to his own use, and refuses to deliver the same or any part of it to the plaintiff : That the plaintiff, as assignee, commenced an action of trover, in the usual form, and setting forth a proper and sufficient cause of action, against the defendant, to recover the value of the property so taken and converted, which action is pending in this court : That, by reason of the secrecy and conniving of the defendant and the insolvents with others unknown to the plaintiff, he is unable to show the real nature of the transaction, which is the subject of his action, in a court of law, without the aid of a court of equity : That the plaintiff is informed and believes, that the mortgage from the insolvents to the defendant was without consideration and void; that the defendant never paid the insolvents the sum of eight hundred dollars, recited in the mortgage as the consideration thereof, but received the goods therein mentioned to his own use, without rendering such equivalent therefor ; that the defendant, at the time of the making of the mortgage, knew that the insolvents were in failing cir cumstances ; that the mortgage was made by the insolvents with full knowledge of their insolvency and contemplated failure ; that the defendant was not present at the executing and making of the mortgage, and that the same was made without his knowledge and conser t; that the defendant

never saw the goods included in the mortgage ; that he was never in the store or place of business of the insolvents before or at the time of the making of the mortgage, nor until a long time after the failure of the insolvents ; and that the defendant did not, at the time, know the value of the goods included in the mortgage, but was wholly unacquainted therewith.

The prayer of the bill was, that the defendant might answer, on oath, as to all the matters stated therein ; and, further, as to his dealings and affairs with the insolvents, previous to and at the time of the making of the mortgage, — whether the insolvents were then indebted to him, and to what amount, — whether, and to whom, if at all, the consideration of the mortgage was paid, in what sums, and at what times, — what was the value of the goods mortgaged, — what value thereof had come to his hands, — what part had been sold, — to whose use, the proceeds had come, — whether to the use of any other person than the defendant, — whether the insolvents, or either of them, or any person on their behalf, had received any part thereof, — whether, since the mortgage, there had been any dealings between the defendant and the insolvents, — what is the condition of that part of the mortgaged property, which remains unsold, — whether any of the goods have been exchanged or disposed of in any other way than for money, — whether the defendant, before and at the time of the mortgage, did not know that the insolvents were in failing circumstances, — whether the defendant was present at the making of the mortgage, — whether it was not made without his knowledge and consent, — whether he ever saw the goods included in the mortgage, until after it was made, &c.

The defendant demurred, and showed for cause, that the bill does not set forth any title in the plaintiff to the property, which is the subject of his action at law ; that the facts sought to be discovered are not necessary or material to support the action ; and that they are not matters which lie only in the knowledge of the defendant.

*J. C. Adams*, for himself.

*D. H. Mason*, for the defendant.

DEWEY, J.    Various objections are taken, and urged as causes of demurrer, to this bill.

1. It is said, that the title of the plaintiff is insufficiently set forth.    The bill merely alleges, that the insolvents, Woods and Cobb, filed their petition for proceedings in insolvency, before Bradford Sumner, a master in chancery; that the usual proceedings took place thereupon; that, at the first meeting of the creditors, the plaintiff was chosen assignee; and that he entered upon the duties of his trust, and continued, and still continues, to be such assignee.    But the bill does not allege an assignment to the plaintiff, by a deed from the master in chancery, of the estate of the insolvents. Such an assignment is required by the statute, and is a necessary part of the proceedings to vest the estate of the insolvents in the assignee, and to authorize him to litigate the title thereto.    The appointment of an assignee does not, of itself, vest the property in him.

If the proceedings before the master are necessary to be recited in the bill at all, and if it would be insufficient to describe the plaintiff merely as the assignee of Woods and Cobb, leaving all other matters to be shown by proof, in the progress of the cause, the deed of assignment should be recited in the bill, as it is one of the necessary steps, in order to show the right of the plaintiff to institute the suit at law, in aid of which the bill of discovery is brought.    As the bill must be amended for another cause, as will be seen hereafter, it may also be amended in this particular; and this objection, therefore, need be no further considered.

2 It is further objected to the bill, that it charges a conspiracy, and seeks a disclosure from the defendant of facts, which may implicate him as a party to such conspiracy.    If such be a correct view of the allegations in the bill, this objection would be well taken, as no one is bound to make answer to interrogatories, in a bill of discovery

15 *

which may be used as evidence against him on a criminal charge. The allegation of an unlawful confederation or conspiracy, which is usually introduced into bills in equity, is rather to be considered, however, as constituting a merely formal part of the bill, and requiring no particular answer. If the bill be objectionable, as containing an allegation of a conspiracy, and seeking to procure evidence from the defendant to sustain such allegation, it is so principally from the effect to be given to the rule of this court, (Chancery, Rule 4,) which provides, that the allegation of combination and fraud shall be omitted in all bills, in which no actual fraud or combination is specifically charged. Perhaps, even under our rules, this might be considered as a mere formal allegation, and not an actual charge of a criminal conspiracy; but, however this may be, we think the allegation should be omitted in a bill of discovery, and that the bill should be amended by striking out this allegation.

3. The remaining objection is one of substance, which goes directly to the question of sustaining a bill of discovery, for the purposes for which the present bill was filed. The leading object of the bill is to interrogate the defendant as to the various dealings between him and the insolvent debtors, Woods and Cobb, with a view of obtaining answers, either to be used as evidence in themselves, or to aid the plaintiff in procuring other evidence, to impeach a certain mortgage title of the defendant, by force of which he claims to hold certain personal property, formerly the property of the insolvents, Woods and Cobb, the mortgage having been made by them before the institution of the proceedings in insolvency.

The defendant denies the right of the plaintiff to make the proposed inquiries, insisting that such inquiries are a violation of the rule in chancery, that a bill of discovery does not lie to inquire into the title of the defendant. The precise extent of the rule does not seem to be very clearly defined; and it is stated with many qualifications and limitations. The leading purpose of it seems to be, to restrain a

party from using a bill of discovery, as an instrument to pry into, and, by means of the answers thereto, to ascertain, the secret defects of a title under which he does not claim.

How far the rule alluded to would preclude inquiries of the character now proposed, and whether interrogatories not asking the adverse party to inform the plaintiff under what title he claims, but, knowledge of that title being obtained from other sources, as in the present instance from a public record, asking only as to the existence of certain facts, which might avoid a known claim of title, may be questionable. It would be proper also to consider, whether the proposed interrogatories might not be regarded as inquiries relative to facts bearing upon the plaintiff's title, both parties claiming through a common source of title. These inquiries would lead to a particular examination of the extent of the supposed rule, and a consideration of the cases to which it is applicable, if the rule were at all applicable to a case like the present, and in the courts of this commonwealth.

The rule is thus stated in Cooper's Equity Pleading, 58: " The plaintiff shall only have a discovery of what is necessary for his own title, as of deeds he claims under, and not pry into the title of the defendant." See also 2 Ves. Sen. 445 ; Story Eq. Pleading, § 858. But Cooper also remarks, that " a devisee is entitled, against the heir, to a discovery of deeds relating to the estate, otherwise the heir might defend himself at law, by setting up prior incumbrances, and by that means prevent trying the validity of the will." And again, he says: " But the court will never enable a defendant to commit a fraud by resisting a discovery." Whether this latter principle would not fully open to the plaintiff the inquiry which he seeks, would also be a proper subject for our consideration, if the case required an opinion of this restricted character.

But such inquiries are unnecessary ; inasmuch, as assuming the English rule to be what it is supposed to be by the defendant, yet it is not applicable in this commonwealth. Our whole system of inquiry, by the instrumentality of a legal

proceeding, has been that of full inquiry as to any and all facts, that may impeach the right of property in the party of whom the inquiry is made. This principle is fully applied in the interrogatories, which are allowed to be put to a supposed trustee in the trustee process. No restriction is imposed, and it is competent to ask any question, the answer to which may impeach the party's title to real or personal estate.

A latitude equally broad exists in the interrogatories which may be proposed to one charged with embezzling the property of deceased persons. But the most distinct recognition of this right to a full and searching inquiry into the title of an adversary, is contained in the provisions of the statute of 1846, *c.* 168, by which it is enacted, that persons, charged with having fraudulently received the property of an insolvent debtor, may be summoned to appear before a master in chancery, and be there examined on oath touching such complaint. This provision is entirely inconsistent with any supposed rule, that a party is to be protected from all inquiry into the validity of his own title, but, on the contrary, authorizes the fullest inquiry; and, though enacted with a view to proceedings before a different tribunal, and in a different form, is nevertheless quite significant, as a legislative declaration of the principle applicable to this subject.

Looking at the whole subject, and in view of the suggestions above stated, the court are of opinion, that the objection taken by the defendant to the general course of the inquiry, and especially to the inquiry as to the title of the defendant, cannot be sustained. The defendant, therefore, upon proper amendments being made to the bill, will proceed to file his answer to all such of the interrogatories, as seek to inquire into the various dealings of the defendant and the insolvents, Woods and Cobb, and as to any property which the defendant may have received from them, and all matters appertaining thereto.

A further question was raised as to costs; the plaintiff insisting that the defendant ought not to recover costs, as he has delayed the proceeding by interposing a demurrer, which

is now to be withdrawn, and which has been in part over-ruled. The court are of opinion, that filing this demurrer should not affect the question of costs. The demurrer was well taken, as to certain formal parts of the bill; and, although we should not have been disposed to tax the plaintiff with costs, as a condition upon which an amendment was to be allowed; yet, under the circumstances, we think that when amended the costs must stand upon the usual terms of bills of discovery, and that upon the proper and full answer being filed by the defendant, he will be entitled to his costs